**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JAN MOUZON, *et al.*,<br>          Plaintiffs<br><br>          v.<br><br>RADIANCY, INC., *et al.*,<br>          Defendants | Civil Action No. 14-722 (CKK) |

**MEMORANDUM OPINION**
(March 30, 2015)

This action arises from the advertising and sale of a product called the no!no! Hair removal device (the "product") by Defendant Radiancy, Inc. ("Radiancy"). Thirteen plaintiffs from Washington, D.C., California, Florida, Illinois, Maryland, Virginia, Pennsylvania, Colorado, West Virginia, and Tennessee bring this putative class action against Radiancy, Inc., and its CEO Dolev Rafaeli. Together Plaintiffs bring the claims in this action on their own behalf and on behalf of a putative nationwide class, or alternatively, on behalf of ten subclasses, each limited to the residents of a single state. First, all Plaintiffs bring a claim pursuant to New York General Business Law §§ 349-350, on their own behalf and on behalf of the putative nationwide class, alleging that Defendants engaged in "a scheme to deceive customers and the public" (Count 1). Second, Plaintiffs bring claims pursuant to state consumer protection laws on their behalf and on behalf of the respective putative state subclasses (Count 2 through 12).[1] Third, and

---

[1] Plaintiffs bring the following state law claims with respect to specific Plaintiff subclasses:

- On behalf of the putative California subclass, Plaintiffs bring claims for violation of the California Consumer Legal Remedies Act (Count 2), the California Unfair Competition Law (Count 3), and the California False Advertising Law (Count 4).
- On behalf of the putative District of Columbia subclass, Plaintiffs bring a claim for violation of the D.C. Consumer Protections Procedures Act (Count 5).
- On behalf of the putative Florida subclass, Plaintiffs bring a claim for violation of the Florida Deceptive and Unfair Trade Practices Act (Count 6).

finally, Plaintiffs bring warranty-based claims on their own behalf and on behalf of the putative

nationwide class and the putative state subclasses. Specifically, Plaintiffs bring a claim for breach

of express warranty (Count 13); a claim for breach of implied warranty of merchantability and

fitness for a particular purpose (Count 14); and a claim for violation of the federal Magnuson-

Moss Warranty Act (Count 15). Defendant Radiancy moves to dismiss for failure to state a claim.

Defendant Rafaeli moves to dismiss for lack of personal jurisdiction over him and for failure to

state a claim. Rafaeli joins Radiancy's arguments regarding the failure to state a claim and

presents separate arguments as to why the Complaint fails to state a claim against him.

Before the Court is Defendant Radiancy's [14] Motion to Dismiss and Defendant

Rafaeli's [13] Motion to Dismiss Putative Class Action Complaint. Upon consideration of the

pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS

---

- On behalf of the putative Illinois subclass, Plaintiffs bring a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count 7).

- On behalf of the putative Maryland subclass, Plaintiffs bring a claim for violation of the Maryland Consumer Protection Act (Count 8).

- On behalf of the putative Virginia subclass, Plaintiffs bring a claim for violation of the Virginia Consumer Protection Act (Count 9).

- On behalf of the putative Colorado subclass, Plaintiffs bring a claim for violation of the Colorado Consumer Protection Act (Count 10).

- On behalf of the putative West Virginia subclass, Plaintiffs bring a claim for violation of the West Virginia Consumer Protection Act (Count 11).

- On behalf of the putative Pennsylvania subclass, Plaintiffs bring a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count 12).

Plaintiffs bring no separate claim on behalf of the putative Tennessee subclass.

[2] The Court's consideration has focused on the following documents:

- Pls.' Complaint ("Compl.), ECF No. 1;

- Def. Dolev Rafaeli's Mot. to Dismiss Putative Class Action Compl. ("Rafaeli Mot."), ECF No. 13;

- Def. Radiancy, Inc.'s Mot. to Dismiss ("Radiancy Mot."), ECF No. 14;

- Pls.' Mem. of Points and Authorities in Opp'n to Def. Rafaeli's Mot. to Dismiss Pls.' Class Action Compl. ("Pls.' Rafaeli Opp'n"), ECF No. 16;

Defendant Radiancy's [14] Motion to Dismiss and GRANTS Defendant Rafaeli's [13] Motion to Dismiss Putative Class Action Complaint. All claims against Rafaeli are DISMISSED for want of personal jurisdiction, and Plaintiffs' request for jurisdictional discovery with respect to Rafaeli is DENIED. All claims against Radiancy are DISMISSED because they fail to state a claim. Specially, the claim pursuant to New York General Business Law §§ 349-50 (Count 1) and the implied warranty of fitness for a particular purpose claim (Count 14, part 2) are dismissed WITH PREJUDICE. The state-specific consumer protection claims (Counts 2 through 12), the express warranty claim (Count 13), the implied warranty of merchantability claim (Count 14, part 1), and the Magnuson-Moss Warranty Act claim (Count 15) are dismissed WITHOUT PREJUDICE. Finally, Plaintiffs' cursory request to amend the complaint is DENIED. This action is dismissed in its entirety.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court recites the principal facts pertaining to the issues raised in the pending motions, reserving further presentation of the facts for the discussion of the individual issues below.

---

- Pls.' Mem of Points and Authorities in Opp'n to Def. Radiancy's Mot. to Dismiss Pls.' Class Action Compl. ("Pls.' Radiancy Opp'n"), ECF No. 17;
- Def. Radiancy's Reply Mem. of Points and Authorities in Supp. of its Mot. to Dismiss ("Radiancy Reply"), ECF No. 18; and
- Def. Dr. Rafaeli's Reply Mem. of Points and Authorities in Supp. of its Mot. to Dismiss ("Rafaeli Reply"), ECF No. 19.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

The no!no! Hair removal device is manufactured and distributed by Defendant Radiancy. Compl. ¶ 1. Radiancy has marketed the device as capable of permanent or "long term" hair removal by suppressing hair growth. *Id.* ¶ 2. However, Plaintiffs allege that this claim is false and that the device cannot destroy hair follicles or suppress the ability of hair to regrow. *Id.* ¶ 4. Plaintiffs further allege that Radiancy engaged in a deceptive marketing campaign, using television and Internet advertisements that misrepresent the characteristics of the devices. *Id.* ¶ 6. With respect to Rafaeli, Plaintiffs allege that he "personally supervised, controlled, directed, and profited from" the marketing campaign. *Id.* ¶ 7.

Plaintiffs are thirteen individuals from nine different states and the District of Columbia who purchased the device between June 2010 and December 2013. *See id.* ¶¶ 13-25. Plaintiffs are one resident of the District of Columbia, one resident of California, two residents of Florida, one resident of Illinois, two residents of Maryland, two residents of Virginia, one resident of Pennsylvania, one resident of Colorado, one resident of West Virginia, and one resident of Tennessee. *See id.* The Plaintiffs allege the following regarding each individual plaintiff:

> Defendants' infomercial that Plaintiff viewed prior to purchase prominently displayed the promise of long term or permanent hair removal by suppressing or slowing the regrowth of hair, among other misrepresentations. Plaintiff reasonably relied on Defendants' representations in purchasing the no!no! product. Had Plaintiff known that the Product was unable to prevent hair regrowth and could not live up to its other representations, Plaintiff would not have bought the Product. As a result of Radiancy's and Rafaeli's conduct as alleged herein, Plaintiff has been injured.

*Id.* ¶¶ 13-25. With respect to each individual, Plaintiffs allege the name, the state of residence, and the date or approximate date of the purchase of the product; those details are reproduced in

full in the margin.[3] The Court notes that the Complaint does not include any other allegations

regarding the individual plaintiffs, their experiences with the no!no! Hair removal device, or their

exposure to Radiancy's representations of the device. *See id.* ¶¶ 1-12, 26-314. The Court reserves

further presentation of facts pertinent to Plaintiffs' specific claims and Defendants' defenses for

the discussion below.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed.

R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual

allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*,

550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that

---

[3] The following is a list of each Plaintiff, the state of residence at the time the Complaint was
filed, and the date of purchasing the product:

- Jan Mouzon (District of Columbia), product purchase between June 2010 and April 26,
  2011. Compl. ¶ 13.
- Sarah Coe (California), product purchase on or about May 31, 2012. *Id.* ¶ 14.
- Patricia Bennett (Florida), product purchase on or about June 6, 2012. *Id.* ¶ 15.
- Jan Steich (Florida), product purchase on or about December 2013. *Id.* ¶ 16.
- Rosalie Tecktiel (Illinois), product purchase on or about April 20, 2013. *Id.* ¶ 17.
- Alice Largen (Maryland), product purchase on or about February 2012. *Id.* ¶ 18.
- Lorie Hurst (Maryland), product purchase on or about July 8, 2012. *Id.* ¶ 19.
- Rachel Dondero (Virginia), product purchase on or about July 22, 2012. *Id.* ¶ 20.
- Nancy Moore (Virginia), product purchase on or about December 7, 2012. *Id.* ¶ 21.
- Michele Uram (Pennsylvania), product purchase on or about April 2013. *Id.* ¶ 22.
- Kris Steinbauer (Colorado), product purchase on or about September 2012. *Id.* ¶ 23.
- Juanita Humbertson (West Virginia), product purchase on or about November 2012. *Id.*
  ¶ 24.
- Al Oliveria (Tennessee), product purchase on or about 2013. *Id.* ¶ 25.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990). At this stage, Plaintiffs "can satisfy that burden with a *prima facie* showing.'" *Mwani v. bin Laden,* 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 424 (D.C. Cir. 1991)). To do so, the plaintiff cannot rest on bare allegations or conclusory statements but "must allege specific acts connecting [the] defendant with the forum." *Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation marks omitted). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;]" but rather, the plaintiffs may "rest [their] arguments on the pleadings, 'bolstered by such affidavits and other written materials as [they] can otherwise obtain.'" *Urban Inst. v. FINCON Servs.,* 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting *Mwani,* 417 F.3d at 7).

In order to obtain jurisdictional discovery a "plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1090 (D.C. Cir.

1998); *see also Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11

(D.D.C. 2009) (holding that [j]urisdictional discovery … is justified only if the plaintiff

reasonably 'demonstrates that it can supplement its jurisdictional allegations through

discovery.'") (quoting *Kopff v. Battaglia,* 425 F. Supp. 2d 76, 89 (D.D.C. 2006)). "Mere

conjecture or speculation" is not enough to justify jurisdictional discovery. *FC Investment Group*

*LC v. IFX Markets Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008).

### III. DISCUSSION

Defendant Radiancy moves to dismiss, arguing that the Complaint fails to state a claim.

Defendant Rafaeli moves to dismiss, as well, arguing that this Court does not have personal

jurisdiction over him. He also joins Radiancy's arguments with respect to the failure to state a

claim and presents additional arguments about why the Complaint fails to state a claim against

him. The Court first considers whether it has jurisdiction over Rafaeli. Because the Court

concludes it does not have personal jurisdiction over Rafaeli in this action, it does not consider

his arguments that the Complaint fails to state a claim against him. The Court also concludes that

jurisdictional discovery with respect to Rafaeli is not warranted. The Court next considers

Radiancy's arguments that the Complaint fails to state a claim, considering in turn the arguments

with respect to each claim in the Complaint. The Court concludes that the Complaint does not

state a claim against Radiancy.

## A.  Personal Jurisdiction over Rafaeli

### 1.  The Court Does Not Have Personal Jurisdiction Over Defendant Rafaeli

Plaintiffs assert that the Court has specific jurisdiction[4] over Defendant Rafaeli under the

District of Columbia's long-arm statute, D.C. Code § 13-423(a)(1) and (a)(4). *See* Pls.' Rafaeli

Opp'n at 5. Defendant Rafaeli contests this jurisdiction. *See* Rafaeli Mot. at 8-12. The District of

Columbia's long-arm statute, in relevant part, states:

> (a) A District of Columbia court may exercise personal jurisdiction over a person,
> who acts directly or by an agent, as to a claim for relief arising from the
> person's—
>
>> (1) transacting any business in the District of Columbia;
>
>> * * *
>
>> (4) causing tortious injury in the District of Columbia by an act or
>> omission outside the District of Columbia if he regularly does or solicits
>> business, engages in any other persistent course of conduct, or derives
>> substantial revenue from goods used or consumed, or services rendered, in
>> the District of Columbia.

D.C. Code § 13-423 (a)(1), (4). Plaintiffs argue that under subsection (a)(1), Radiancy's

transaction of business in the District of Columbia should be "imputed" to Rafaeli because of his

role at the corporation, relying on the "more than an employee" exception of the fiduciary shield

doctrine. Pls.' Rafaeli Opp'n at 5. Additionally, Plaintiffs argue the Court has jurisdiction over

Rafaeli under subsection (a)(4) because Rafaeli caused tortious injury in the District of Columbia

and "[g]iven the expansive and deceptive marketing campaign authorized and implemented by

Rafaeli, which included the broadcasting of infomercials aimed at residents of the District (and

other jurisdictions), Rafaeli sought business opportunities in the District and derived substantial

income … in the District." *Id.* at 12.

---

[4] Plaintiffs do not assert that the Court has general jurisdiction over Defendant Rafaeli, and the
Court notes that Rafaeli is a resident of New Jersey.

The (a)(1) prong of the District of Columbia's long-arm statute "extends as far as the Fifth Amendment's Due Process Clause permits." *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 162 (D.C. 2000). The exercise of personal jurisdiction must "comport with 'traditional notions of fair play and substantial justice.'" *Wiggins v. Equifax, Inc.*, 853 F. Supp. 500, 502 (D.D.C. 1994) (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 (1987)). To comply with the requirements of due process, a court can only exercise jurisdiction over a defendant who has purposely established minimum contacts with the forum state. *Id.*

Under the fiduciary shield doctrine, personal jurisdiction over a corporate officer may not be asserted based on "contacts with the forum [that] are exclusively in relation to the defendant's corporate responsibility." *Nat'l Cmty. Reinvestment Coal v. NovaStar Fin., Inc.*, 631 F. Supp. 2d 1, 5 (D.D.C. 2009). However, when a corporate officer is "more than an employee" of the corporation, the fiduciary shield doctrine does not shield actions of such an individual conducted in that individual's capacity as a corporate employee. *See id.* at 6 (holding that president of corporation who personally developed and implemented discriminatory policies of corporation and exerted significant influence was not protected by the fiduciary shield doctrine). A corporate officer that exerts significant influence over a corporation's policies and operations and is personally involved in developing the policies at issue may be considered "more than an employee." *See id.* at 7-8. While such an individual is not shielded from jurisdiction, "as a general rule, courts cannot exert jurisdiction over individual corporate officers or employees 'just because the court has jurisdiction over the corporation.'" *Kopff*, 425 F. Supp. 2d at 84 (quoting *Flocco*, 752 A.2d at 162); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him."). The contacts necessary for the Court to exercise personal

jurisdiction must be assessed individually for each defendant. *Keeton*, 465 U.S. at 781 n.13 (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

Assuming that Rafaeli qualifies as "more than an employee" of Radiancy as the chief executive of the company,[5] he is not shielded by the fiduciary shield doctrine. However, that status automatically does not confer personal jurisdiction over him in the District of Columbia. Plaintiffs must still establish that the Court has personal jurisdiction over Rafaeli based on his own actions. *See Keeton*, 465 U.S. at 781 n.13 ("Each defendant's contacts with the forum State must be assessed individually"). Assuming that he is not shielded, Rafaeli's actions in his capacity as CEO of Radiancy may be considered in determining whether personal jurisdiction in the District of Columbia is proper. But Rafaeli's contacts with the forum state must be assessed based on his actions—separately from the corporation's contacts with the forum state.

Rafaeli, in his personal capacity and on his own behalf, did not transact any business within the District of Columbia. While Plaintiffs argue that Radiancy has transacted business in the District of Columbia by virtue of its sale of at least one no!no! Hair removal device to a resident of the District of Columbia,[6] *see* Compl. ¶ 13, Plaintiffs do not suggest anywhere that Rafaeli took any specific actions to target the District of Columbia. Even if Rafaeli "played a central and dominant part in Radiancy's campaign … [and] directly profited from the campaign

---

[5] The Court notes that Rafaeli is likely "more than an employee" given his control over Radiancy's decisions and management style in his role as Chief Executive Officer for Radiancy. *See generally* Compl.

[6] Plaintiffs allege that "Defendants intentionally presented themselves in the District of Columbia through their marketing, promotion, and sales of the product in this jurisdiction." Compl. ¶ 12. However, they do not allege that the one District of Columbia resident plaintiff, Jan Mouzon, who purchased the no!no! Hair removal device actually purchased the product in the District of Columbia or that she was a resident of the District of Columbia at the time of purchase. *See id.* Additionally, while Plaintiffs state that Mouzon purchased the product after viewing Defendants' infomercial, Plaintiffs do not state that Mouzon viewed this infomercial in the District of Columbia. *See id.*

which he controlled," Pls.' Rafaeli Opp'n at 1, Plaintiffs have not alleged that Rafaeli himself

targeted this marketing campaign to the District of Columbia or that Rafaeli directly profited

from business conducted in the District of Columbia. Unlike in *NovaStar*, where the president of

a corporation personally developed and implemented discriminatory policies applied to

thousands of loan applications in the District of Columbia, Plaintiffs here have not shown that

Rafaeli targeted the District of Columbia in his role at Radiancy. Plaintiffs have not shown that

Rafaeli has the required minimum contacts with the District of Columbia, personally or in his

position as CEO of Radiancy. Accordingly, Plaintiffs have not satisfied subsection (a)(1) of the

District of Columbia's long-arm statute, and jurisdiction is not proper under this prong of the

statute.

Similarly, Plaintiffs have not shown that jurisdiction over Rafaeli is proper under the

(a)(4) prong of the District of Columbia's long-arm statute, which applies to a person "causing

tortious injury in the District of Columbia by an act or omission outside the District of

Columbia." This prong requires one of three "plus factors": that the alleged tortfeasor "'regularly

do[ ] or solicit[ ] business' in the District, or 'engage[ ] in [some] other persistent course of

conduct' in the District, or 'derive [ ] substantial revenue from goods used or consumed, or

services rendered' in the District." *Kopff*, 425 F. Supp. 2d at 82 (citing *Crane v. Carr*, 814 F.2d

758, 762 (D.C. Cir. 1987) and D.C. Code § 13-423(a)(4)). Plaintiffs have not presented a *prima*

*facie* case that Rafaeli has satisfied any of these "plus factors." Even if Plaintiffs had shown that

Radiancy has satisfied one of these factors, Rafaeli's role as the CEO of Radiancy does not

automatically mean that he regularly solicited business or engaged in a persistent course of

conduct in the District of Columbia. Further, even if Radiancy derived substantial revenue from

the District of Columbia, which has not been shown, it would not necessarily follow that Rafaeli

derived substantial revenue from the District of Columbia. Plaintiffs have not alleged facts that suggest that any of the three "plus factors" are applicable to Rafaeli. Accordingly, the Court does not have personal jurisdiction over Rafaeli pursuant to subsection (a)(4) of the District of Columbia's long-arm statute.

As neither subsection (a)(1) nor subsection (a)(4) of the District of Columbia's long arm statute confers personal jurisdiction over Rafaeli, the Court dismisses all claims against Defendant Rafaeli.

### 2. Jurisdictional Discovery Is Not Warranted

In the alternative, Plaintiffs request the opportunity to conduct jurisdictional discovery in the event that Plaintiff's briefs are insufficient to establish personal jurisdiction in the District of Columbia over Defendant Rafaeli. *See* Pls.' Rafaeli Opp'n at 14. Defendant challenges this request as "a fishing expedition." *See* Rafaeli Reply 7-8. The Court concludes that jurisdictional discovery is not warranted.

To be granted jurisdictional discovery a "plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys. Ltd.,* 148 F.3d at 1090. "Mere conjecture or speculation" is not enough to justify jurisdictional discovery. *FC Investment Group LC*, 529 F.3d at 1094.

Plaintiffs fail to identify information that could be the basis for jurisdiction over Rafaeli. Plaintiffs state that Rafaeli "directed and controlled Radiancy's policies and deceptive marketing campaign" and that this campaign led to the purchase of the no!no! Hair removal device in the District of Columbia.[7] *Id.* Additionally, Plaintiffs assert that Radiancy communicated, through

---

[7] The Court notes, once again, that Plaintiffs never actually allege that any purchase occurred in the District of Columbia. They only allege that Plaintiff Jan Mouzon is a resident of the District

District of Columbia attorneys, with the FDA seeking an exclusion for the product from certain

FDA testing requirements. Plaintiffs argue that "[i]t is likely that further inquiry into Rafaeli's

contacts with the District will lead to additional information relating to his contacts here, such as

details on meetings with his D.C.-based attorneys regarding the scope of representations that

Radiancy could make… under FDA regulations. Discovery will reveal the exact nature of those

contacts." *Id.*

The Court notes that any contacts that Rafaeli may have had with attorneys in the District

of Columbia in connection with the FDA may fall under the "government contacts" exception to

personal jurisdiction. Under the government contacts exception, "the entry into the District of

Columbia by nonresidents for the purpose of contacting federal agencies is not a basis for

assertion of in personam jurisdiction." *Envtl. Research Int'l, Inc. v. Lockwood Greene Engineers,*

*Inc.*, 355 A.2d 808, 813 (D.C. 1976). If a nonresident defendant's "sole contact with the District

consists of dealing with a federal instrumentality," the defendant is deemed not to be transacting

business such that he falls under the jurisdiction of the District of Columbia long-arm statute. *See*

*Rose v. Silver*, 394 A.2d 1368, 1372-73 (D.C. 1978) (quoting *Envtl. Research Int'l*, 355 A.2d at

813). Rafaeli's alleged meetings with District of Columbia attorneys related to the business of

the company before the FDA may therefore be within the scope of the government contacts

exception and, accordingly, would be excluded from personal jurisdiction analysis.

The Court need not resolve the applicability of the government contacts exception to

these facts because, even if Rafaeli attended meetings with attorneys in the District of Columbia

and those meetings are not excluded from the jurisdictional inquiry due to the government

---

of Columbia, with no reference to her being a District of Columbia resident at the time of
purchase. *See* Compl. ¶ 13.

contacts exception, such meetings would not provide the necessary contacts to show that Rafaeli

specifically targeted the marketing campaign for the no!no! Hair removal device towards the

District of Columbia. These alleged contacts, as described by Plaintiffs, would not show that

Rafaeli entered the District of Columbia to transact business in a way that is directly related to

targeting the District of Columbia market or Plaintiffs' resultant injuries. Plaintiffs do not suggest

any nexus between communications with D.C. lawyers regarding FDA testing requirements and

any marketing or sales strategy by Radiancy that specifically targets the District of Columbia,

and the Court does not find any such connection. Accordingly, jurisdictional discovery regarding

the meetings would not provide information supporting the necessary contacts for personal

jurisdiction over Rafaeli. Without presenting any more details about information relevant to the

jurisdictional inquiry that Plaintiffs seek to obtain, Plaintiff's request for discovery is purely

speculative. Plaintiffs do not present "a good faith belief that such discovery will enable [them]

to show that the court has personal jurisdiction over the defendant," *Caribbean*, 148 F.3d at

1090. They do not explain how such discovery would yield information that would establish

jurisdiction over Rafaeli regarding the alleged deceptive marketing campaign for the no!no! Hair

removal device. Accordingly, jurisdictional discovery is not warranted, and Plaintiffs' request for

such discovery is denied.

## B.  Complaint Does Not State a Claim against Radiancy

Defendant Radiancy moves to dismiss the Complaint on the basis that it fails to state a

claim. The Court analyzes, in turn, each of the claims brought by Plaintiffs and Defendants'

arguments in response.

**1.  New York General Business Law §§ 349-350**

Plaintiffs claim that the "acts engaged in by the Defendants were deceptive, misleading, unfair, and/or show a pattern of untruthful statements, false representations, concealment, intent to mislead that were all part of a scheme to deceive customers and the public," in violation of New York General Business Law §§ 349(a) and 350-a(1). Defendants argue that this statute does not apply here because it does not apply to out-of-state transactions. The Court agrees with Defendants that these statutory provisions are not applicable to the transactions at issue in this case.[8]

Pursuant to section 349 of the New York General Business Law, "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a) (emphasis added). The statute creates a private right of action for "any person who has been injured by reason of any violation of this section." *Id.* § 349(h). "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act[.]" *Stutman v. Chem. Bank,* 731 N.E.2d 608, 611 (N.Y. 2000). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* … ." N.Y. Gen. Bus. Law § 350 (emphasis added). "A claim of false advertising under Section 350 must meet all of the same elements as a claim under Section 349, and the

---

[8] Because the Court determines that the claim pursuant to New York General Business Law §§ 349-350 do not apply to the transactions at issue in this action—and therefore dismisses that claim—the Court need not consider here Defendants' general choice of law argument that New York law should not be applied to Plaintiffs' claim.

plaintiff must further demonstrate proof of actual reliance." *Merck Eprova AG v. Brookstone Pharm., LLC,* 920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013).

In *Goshen v. Mutual Life Insurance Company*, the New York Court of Appeals interpreted the limiting phrase "in this state" in sections 349(a) and 350 to mean "that the transaction in which the consumer is deceived must occur in New York." 774 N.E.2d 1190, 1195 (N.Y. 2002). *See also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013). Subsequently, in *Cruz v. FxDirectDealer, LLC,* the Second Circuit Court of Appeals "recognized that a split of authority has developed subsequent to *Goshen* about the appropriate territorial test to employ under sections 349 and 350." 720 F.3d at 122. The Second Circuit identified "a 'transaction-based' test on the one hand, or, on the other hand, a test premised on where the victim is deceived, regardless of where the transaction occurs." *Id.* Ultimately, the Second Circuit concluded that the "appropriate test in this case is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction." *Id.* The Court need not dwell on whether the Second Circuit correctly interpreted New York state law because both interpretations yield the same result in this case: Plaintiffs have identified no plaintiffs deceived in New York state and have identified no transactions that occurred in New York.

Plaintiffs provide remarkably few details about the transactions at stake. Plaintiffs allege that each plaintiff saw an infomercial regarding the no!no! Hair removal device and subsequently purchased the product. *See* Compl. ¶¶ 13-25. Plaintiffs also allege that each plaintiff resides in one of the following jurisdictions: the District of Columbia, California, Florida, Illinois, Maryland, Virginia, Pennsylvania, Colorado, West Virginia, and Tennessee. *See id.* No plaintiff resides in New York. *See id.* Plaintiffs do not allege where each plaintiff saw the respective infomercial or where each plaintiff purchased the product. *See id.* Plaintiffs include numerous

allegations about a nationwide deceptive marketing scheme, but they do not allege that any plaintiff was exposed to that marketing scheme other than viewing a single infomercial. *See, e.g., id.* ¶¶ 75-77. The Complaint nowhere suggests that any plaintiff purchased the product in New York, was exposed to any part of a marketing campaign in New York, or used the product in New York.[9]

In arguing that underlying events have sufficient connections to New York for the statute to be applicable, Plaintiffs rely on their claim that "Radiancy's deceptive marketing campaign … emanated from Radiancy's New York headquarters." Pls.' Radiancy Opp'n at 16. However, the New York Court of Appeals has explicitly concluded that "the origin of any advertising or promotional conduct is irrelevant if the deception itself—that is, the advertisement or promotional package—did not result in a transaction in which the consumer was harmed." *Goshen*, 774 N.E.2d at 1196. In applying this understanding of the statute in *Goshen*, the New York Court of Appeals concluded that, for a plaintiff who received allegedly misleading information in Florida and purchased a product in Florida, the deception occurred in Florida— notwithstanding the alleged development of a plan in New York to disseminate deceptive information. *See id.* Therefore, the New York Court of Appeals concluded that the plaintiff in that case could not bring an action under the statute. *See id.* The facts of the case before the Court are similar: notwithstanding Plaintiffs' allegations that Radiancy developed the deceptive marketing

---

[9] In Plaintiffs' Opposition to Defendant Rafaeli's Motion to Dismiss, Plaintiffs argue that the Complaint alleges that "Defendants aired an infomercial in the District of Columbia market, which was viewed by Plaintiff Jan Mouzon, a District of Columbia resident." Pls.' Rafaeli Opp'n at 11 (citing Compl. ¶ 13). However, the Complaint, in fact, only alleges that Mouzon, a D.C. resident, saw an infomercial and subsequently purchased the product, without specifying where she did either of those activities. *See* Compl. ¶ 13. Regardless of whether it is a fair inference from the Complaint that each plaintiff viewed the infomercial in question and purchased the product in the state of their current residence, nothing in the Complaint—or in Plaintiffs' interpretation thereof—suggests that any of those activities occurred in New York.

scheme in New York, there are no allegations that suggest that Plaintiffs' exposure to the scheme or purchase of the product occurred in New York. Therefore, like in *Goshen*, the deception here occurred outside of New York, and the Complaint fails to state a claim pursuant to sections 349 and 350.

Plaintiffs rely on the Second Circuit Court of Appeal's opinion in *Cruz* to argue that the emanation of Radiancy's deceptive marketing strategy from New York, Radiancy's principal place of business, is enough for the transactions to be covered by the statutory provision. *See* Pls.' Radiancy Opp'n at 15-16. However, *Cruz* does not stand for that proposition. In *Cruz*, the Second Circuit Court of Appeals noted that that case "involved a series of allegedly deceptive transactions that occurred in New York and implicate the interests of New York." 124 F.3d at 123. In a case involving a complex series of financial transactions, that court outlined "various alleged ties between the customer transactions and New York," and concluded that "some part of the underlying transaction … occur[red] in New York State," which established a basis for the claim. *Id.* at 124 (alterations in original and citation omitted). The complex series of financial transactions in *Cruz* is a far cry from this case. In this case, there is an alleged deceptive marketing campaign launched from New York, but customers were exposed to deception *outside* of New York and acted upon that exposure *outside* of the state. In any event, regardless of the Second Circuit's discussion of New York law in *Cruz,* it is the New York Court of Appeals' holding in *Goshen* – that the "transaction in which the consumer is deceived must occur in New York" – that is binding on this Court. 774 N.E.2d at 1195. Here, the Complaint does not identify any deceptive transaction that occurred in New York.

The reasoning of the New York Court of Appeals interpreting section 349 further supports this conclusion. "To apply the statute to out-of-state transactions in the case before us would lead

to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349." *Goshen*, 774 N.E.2d at 1196. Furthermore, the New York Court of Appeals stated that an expansive interpretation of the territorial reach of the statute—like the expansive interpretation of the out-of-state Plaintiffs here—"would tread on the ability of other states to regulate their own markets and enforce their own consumer protection laws." *Id.* So, too, here, the application of this New York statute to claims by residents of other states based on their purchase of a device sold by a New York company—when there is no indication that the sales occurred in New York or that those residents saw advertising of the product while in New York—would tread on the ability of other states to regulate their own markets.

In conclusion, the Complaint fails to state a claim pursuant to New York General Business Law sections 349 and 350 because the Complaint fails to identify any transactions that occurred in New York in which Plaintiffs—who are not New York residents—were deceived. Because "'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,'" dismissal of this claim with prejudice is warranted. *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) (quoting *Belizan v. Hershon,* 434 F.3d 579, 583 (D.C. Cir. 2006)). Accordingly, Count 1 is dismissed with prejudice.

### 2.   State-Specific Consumer Protection Claims

As an alternative to the application of New York General Business Law §§ 349 and 350 to all plaintiffs, Plaintiffs assert claims pursuant to the consumer protection laws of California, the District of Columbia, Florida, Illinois, Maryland, Virginia, West Virginia, Colorado, and

Pennsylvania on their own behalf and on behalf of putative subclasses of the respective states.[10]

Each of these claims is based on alleged deceptive advertising with regarding the no!no! Hair

removal devices, including affirmative misrepresentations and omissions with respect to the

device. *See* Compl. ¶¶ 199, 213, 214, 224, 225, 231 (the three California claims); *id.* ¶ 231 (D.C.

claim); *id.* ¶¶ 237-238 (Florida claim); *id.* ¶¶ 246, 247, 250 (Illinois claim); *id.* ¶¶ 254-55

(Maryland claim); *id.* ¶¶ 260, 263 (Virginia claim); *id.* ¶¶ 269, 271 (Colorado claim); *id.* ¶¶ 269,

271 (West Virginia claim); *id.* ¶¶ 283, 286 (Pennsylvania claim). With respect to each of these

claims, Defendants argue that Federal Rule of Civil Procedure 9(b) requires pleading each claim

with particularity because each involves allegations of fraud. *See* Fed. R. Civ. P. 9(b) ("In

alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be

alleged generally."). Defendants then argue that the Plaintiffs have not pleaded the fraud

allegations with particularity and that each of these claims should be dismissed. The Court first

discusses the applicability of Rule 9(b), concluding that it applies to each claim at issue here. The

---

[10] Plaintiffs allege violations of the following statutes: the California Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*. (Count 2); the California Unfair Competition Law, Cal. Bus. Prof. Code § 17200 *et seq*. (Count 3), the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (Count 4); the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.* (Count 5); the Florida Deceptive and Unfair Trade Practices Act, F.S.A.T. XXXIII, Ch. 501, Pt. II, *et seq*. (Count 6); the Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (Count 7); the Maryland Consumer Protection Act, Md. COML, Sec. 13-101, *et seq.* (Count 8); the Virginia Consumer Protection Act, Va. Code Ann. 59.1-196, *et seq*. (Count 9); the Colorado Consumer Protection Act, Col. Rev. Stat. 6-1-105(1), *et seq.* (Count 10); the West Virginia Consumer Credit and Protection Act, § 46A-6-101, *et seq.* (Count 11); and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, § 201-1, *et seq.* (Count 12).

In their Opposition, Plaintiffs reference a claim pursuant to Tennessee law on behalf of a Tennessee subclass. *See* Pls.' Radiancy Opp'n at 3. However, while the Complaint references a Tennessee subclass, *see* Compl. ¶ 176(g), it does not include any claim pursuant to Tennessee law.

Court then concludes that Plaintiffs have failed to plead these claims with particularity. Because the Court determines that the Complaint fails to satisfy the requirement of pleading fraud allegations with particularity, the Court need not consider Defendants' argument, in the alternative, that even if Rule 9(b) does not apply, the Complaint fails to state a claim with respect to a subset of the state claims[11] because Plaintiffs failed to plead reliance adequately.[12] The Court also considers Defendants' argument that Plaintiffs failed to comply with the notice requirements of the West Virginia statute and concludes Plaintiffs have failed to comply with this requirement.

---

[11] Specifically, the California, Florida, Illinois, Maryland, Virginia, West Virginia and Pennsylvania claims.

[12] The Court does not reach Defendants' reliance argument but notes that standard for causation or reliance varies among the state statutory claims presented. Specifically, with respect to the Florida and Illinois claim, a plaintiff is required to show causation but not reliance. *See Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 685 (S.D. Fla. 2008) ("Under [Florida Deceptive and Unfair Trade Practices Act], a litigant must demonstrate three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."); *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009) ("[Illinois] Consumer Fraud Act claim requires (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception."). With respect to the Maryland claim, by contrast, reliance is necessary when a plaintiff is seeking restitution or damages. *See Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 235 (Md. 2000). With respect to the West Virginia claim, reliance is necessary for claims based on affirmative misrepresentations and a showing of proximate cause (or, alternatively, but-for causation) is necessary for claims based on omission. *See White v. Wyeth*, 705 S.E.2d 828, 837 (W. Va. 2010). Finally, reliance is a necessary element of the California, Virginia, Pennsylvania statutory claims. *See In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009) (requiring a showing that misrepresentations were the "immediate cause" but not necessary the "sole or even the decisive cause of the injury-producing conduct"); *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 888 (Cal. 2011) (applying analysis of *In re Tobacco II Cases* to California False Advertising Law); *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1182-83 (C.D. Cal. 2007) (for California Legal Remedies Act, plaintiff can satisfy reliance element by alleging that "a false or deceptive advertisement 'induced the plaintiff to alter his position to his detriment'"); *Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 189 (E.D. Va. 2005) (Virginia); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 203 (Pa. 2007) (citing *Weinberg v. Sun Co., Inc.*, 777 A.2d 442 (Pa. 2001) (Pennsylvania). Defendants do not argue that reliance is necessary for the District of Columbia and Colorado claims.

### a.   Rule 9(b) is Applicable to Each State-Specific Claim

"[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985)) (emphasis in original). Other federal courts have determined that claims pursuant to the consumer protection laws of California, the District of Columbia, Illinois, Maryland, Virginia, Colorado, West Virginia, and Pennsylvania require pleading with particularity when they are based on fraud. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (even though fraud is not a necessary element California Legal Remedies Act and the California Unfair Competition Law, claims involving nondisclosure or affirmative misrepresentation are claims of fraud and require pleading with particularity); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1114 (S.D. Cal. 2011) (Rule 9(b) applicable to claims of violations of the California False Advertising Law grounded in fraud); *Jefferson v. Collins*, 905 F. Supp. 2d 269, 289 (D.D.C. 2012) (fraud-based claims under the D.C. Consumer Protections Procedures Act require pleading with particularity); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (allegations of fraud under the Illinois Consumer Fraud Act trigger heightened pleading standard of Rule 9(b)); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (Maryland Consumer Protection Act claims sounding in fraud require pleading with particularity); *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010) (Rule 9(b)'s particularity requirements apply to Virginia Consumer Protection Act sounding in Fraud); *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120-21 (D. Colo. 2011) (pleading with particularity pursuant to Rule 9(b) is required for deceptive or unfair trade practice claim under the Colorado Consumer

Protection Act); *Stanley v. Huntington Nat. Bank*, No. 1:11CV54, 2012 WL 254135, at *7

(N.D.W. Va. Jan. 27, 2012) *aff'd*, 492 F. App'x 456 (4th Cir. 2012) (pleading with particularity

pursuant to Rule 9(b) is required for the West Virginia Consumer Protection Act claim); *Kee v.

Zimmer, Inc.*, 871 F. Supp. 2d 405, 412 (E.D. Pa. 2012) (claims pursuant to the Pennsylvania

Unfair Trade Practices and Consumer Protection Law require pleading with particularity). Each

of the claims in this action pursuant to the consumer protection acts of these states is based on

fraud and includes allegations of affirmative misrepresentation. *See, e.g.*, Compl. ¶¶ 199, 213,

224, 225 (affirmative misrepresentations basis of California claims). Therefore, Rule 9(b) applies

to each of these claims, and pleading with particularity is required.

  While federal courts in Florida are split about the applicability of Rule 9(b) to claims

pursuant to Florida Deceptive and Unfair Trade Practices Act, the Court concludes that the claim

pursuant to that statute in this case requires pleading with particularity. Some courts have found

the particularity requirement of Rule 9(b) applicable to this statute. *See, e.g.*, *Begualg Inv. Mgmt.

Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *5 (S.D. Fla. Sept. 23,

2011); *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla.

Feb. 22, 2011); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002). Others

have found the particularity requirement inapplicable. *See, e.g.*, *Galstaldi v. Sunvest Cmties.

USA*, LLC, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009); *Toback v. GNC Holdings, Inc.*, No. 13-

80526-CIV, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) ("Rule 9(b)'s requirements are

implicated by allegations of fraud, but because [the statute] was enacted to provide remedies for

conduct outside the reach of traditional common law torts like fraud, "the plaintiff need not

prove the elements of fraud to sustain an action under the statute."") (citation omitted). In *Llado-

Carreno*, a district judge of the Southern District of Florida reasoned that, even if Rule 9(b) is not

applicable to *all* claims under the Florida statute, it is applicable to claims under the statute that "sound in fraud." 2011 WL 705403, at *5. The Court is persuaded by this reasoning. In this case, as in *Llado-Carreno*, the Florida claim is based on the allegations that Defendants orchestrated a fraudulent advertising scheme that caused Plaintiffs to purchase the product. *See* Compl. ¶¶ 237-38. In other words, the Florida law claim here sounds in fraud, just like the claim in *Llado-Carreno*, and the requirements of Rule 9(b) are applicable with respect to the Florida claim in this action, just as they apply to each of the other state statutory claims discussed in this section.

### b.   The Complaint Does Not Satisfy the Requirements of Rule 9(b) with Respect to the State-Specific Consumer Protection Claims

"[T]o satisfy Rule 9(b), 'the pleader [must] ... state the time, place and content of the false misrepresentations, the fact misrepresented ... [,] what was retained or given up as a consequence of the fraud,' and 'identify individuals allegedly involved in the fraud.'" *Jefferson*, 905 F. Supp. 2d at 289 (quoting *United States ex rel. Williams v. Martin-Baker Aircraft Co.,* 389 F.3d 1251, 1256 (D.C. Cir. 2004)). "And when a fraud claim is based on omissions rather than affirmative misstatements, Rule 9(b) requires the plaintiff to plead, among other things, who omitted the facts, what facts were omitted, why the omission was misleading, and when the disclosure should have been made." *Id.* at 289-90.

With respect to each individual plaintiff, the Complaint contains a single allegation. Each of these allegations contains identical language—with the exception of the name of the plaintiff, the state of the plaintiff's residence, and the date (or approximate date) of the purchase of the device. *See* Compl. ¶¶ 13-25. For example, with respect to the single California plaintiff, Plaintiffs allege as follows:

> Plaintiff Sarah Co is a resident of California. Plaintiff Coe purchased the Product on or about May 31, 2012. Defendants' infomercial that Plaintiff viewed prior to purchase prominently displayed the promise of long term or permanent hair

removal by suppressing or slowing the regrowth of hair, among other misrepresentations. Plaintiff reasonably relied on Defendants' representations in purchasing the no!no! product. Had Plaintiff known that the Product was unable to prevent hair regrowth and could not live up to its other representations, Plaintiff would not have bought the Product. As a result of Radiancy's and Rafaeli's conduct as alleged herein, Plaintiff has been injured.

*Id.* ¶ 14. Plaintiffs do not allege any specific facts regarding Plaintiff Coe's exposure to the alleged fraudulent advertising campaign. They do not state the circumstances under which she viewed the infomercial, whether she was exposed to any advertising other than a single infomercial, or detail the role that the infomercial played in her decision to purchase the no!no! Hair removal device. Similarly, none of the allegations regarding other individual plaintiffs provide any additional specific facts about their exposure to this advertising campaign. Each allegation pertaining to an individual plaintiff is limited to the exact same conclusory language as the allegation regarding Plaintiff Coe. *See id.* ¶¶ 13-25.

Although the Complaint includes numerous allegations regarding the advertising campaign and the alleged fraud underlying it, it does not include *any* other factual allegations regarding Plaintiffs' exposure to the campaign and the impact that this exposure had on their purchasing decisions. Because the missing information pertains to Plaintiffs' own experiences, that information would be within Plaintiffs' control. In other words, this is not a situation where Plaintiffs could not plead with particularity because the information is within Defendants' control and would require discovery to uncover. Although the Court might not expect each plaintiff to recall the exact date and time when they watched a particular infomercial, far more than the conclusory allegations provided in the Complaint is needed in order to properly plead a fraud-based claim. Notably, Plaintiffs have not alleged the basic circumstances under which they were exposed to the infomercial and purchased the device, which the Court would expect the individual Plaintiffs to recall. These missing basic facts include whether each individual

25

Plaintiffs watched the infomercial and purchased the device in their state of residence—under whose law each brings a state-specific claim. Indeed, because Plaintiffs do not specifically allege being exposed to any components of the alleged advertising campaign other than one infomercial—while they allege a large deceptive advertising scheme by Defendants—the circumstances of the viewing of the single infomercial by each individual plaintiff are particularly important. *Cf. In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009) (when plaintiffs were exposed to "long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements."). As a result, the absence of detail about Plaintiffs experiences leads to the conclusion that Plaintiffs have not pleaded these claims with the requisite particularity. For these reasons, the Court concludes that Plaintiffs have failed to plead Counts 2 through 12 with particularity and the Court dismisses each of these claims.[13]

---

[13] In addition, the allegations in the Complaint associated with specific state-law claims—as opposed to those global allegations incorporated in each claim—contain no references to the experiences of the individual plaintiffs. *See* Compl. ¶¶ 193-286. While there are some minor differences among the allegations specific to individual state claims, none of the differences are material for the purposes of the motions considered today. Indeed, these differences appear to result from the presentations of allegations that echo the elements of the respective claims. *See, e.g., id.* ¶ 239 (with respect to Florida claim, "[t]o date, Plaintiffs have not received the benefit of their bargain in that the Product has not achieved its stated promise of significantly reducing hair regrowth and functioning in the same way as 'laser' hair removal); *id.* ¶ 248 ("The misrepresentation and/or deception alleged herein occurred in connection with Defendants' conduct of trade and commerce in Illinois."). Therefore, no additional analysis of the allegations specific to each individual claim is necessary in order for the Court to conclude that each of these state-specific claims must be dismissed.

### c.   Plaintiffs Did Not Comply with the Notice requirement of the West Virginia Consumer Credit and Protection Act (Count 11)

The Court, above, concluded that Plaintiffs' claim pursuant to the West Virginia Consumer Credit and Protection Act,[14] § 46A-6-101, *et seq.*, failed because Plaintiffs did not plead this claim with particularity pursuant to Rule 9(b). In addition, Defendants argue that Plaintiffs failed to comply with the notice requirements of the West Virginia statute. The Court addresses that argument here and agrees that Plaintiffs have failed to comply with the statute's notice requirement.

In order to pursue a claim pursuant to the West Virginia Consumer Protection Act, a plaintiff must provide notice to the would-be defendants prior to filing suit. *See Rawls v. Associated Materials*, LLC, No. 1:10-CV-01272, 2012 WL 3852875, at *6 (S.D. W. Va. Sept. 5, 2012); *Stanley v. Huntington Nat. Bank*, 492 F. App'x 456, 457 (4th Cir. 2012) (unpublished). While Plaintiffs sent a notice to Defendants, the content of that notice does not meet the statutory requirements.[15] The notice states that Plaintiffs intend to sue Defendants "for violation of state consumer protection statutes, the Magnuson-Moss Warranty Act, and breaches of express and implied warranties." Pls.' Radiancy Opp'n, Ex. C at 5. The notice outlines the substantive claims in this action and explicitly states that those claims "violate the CLRA [California Legal Remedies Act] and the consumer laws of all the states in which you have sold the device." *Id.* at 6. The notice includes several additional references to the California Legal Remedies Act—one

---

[14] The Court notes that, in the Complaint, Plaintiffs refer to the act as the West Virginia Consumer Protect Act. But the actual name of the statute is the West Virginia Consumer Credit & Protection Act, which the parties use in the subsequent briefing. *See Rawls v. Associated Materials, LLC*, No. 1:10-CV-01272, 2012 WL 3852875, at *6 (S.D. W. Va. Sept. 5, 2012) (citing W.Va. Code § 46A6-106(b)).

[15] The Court need not address Defendants' argument that the notice was not sent to the proper address because the Court concludes that the content of the notice was deficient.

of the other consumer protection statutes at issue in this action—but includes no explicit references to any other specific state statutes. However, for a notice to satisfy the requirements of the West Virginia Consumer Credit and Protection Act, "the required notice must specifically assert a violation of the [West Virginia Consumer Credit and Protection Act]." *See Rawls*, 2012 WL 3852875, at *6 (citing *Stanley*, 2012 WL 254135, at *7). In *Rawls*, the court found a notice insufficient when "[o]nly in the last sentence of the letter do Plaintiffs mention suing under the [act]." *See id.* Here, while the notice mentions, generally, violations of state consumer protection statutes, there is no explicit mention of the West Virginia statute at any point in the notice. The general reference to consumer protection statutes is not enough. In particular, it is notable that the notice includes several explicit references to the California Legal Remedies Act, but no explicit references to either the State of West Virginia or to the West Virginia Consumer Credit and Protection Act. Accordingly, the Court concludes that this notice is insufficient to satisfy the statutory requirements.

In a footnote, Plaintiffs ask that, if the Court determines that the notice is insufficient, they be afforded an opportunity to send a corrected letter. If the Court were to allow this request now, it would contradict the purpose of the statutory notice requirement: to provide Defendants notice of Plaintiffs' intent to file a suit pursuant to the West Virginia statute *before* the suit was filed. Accordingly, that request is denied.

Both because the Complaint fails to plead this claim with particularity as required by Rule 9(b) and because Plaintiffs failed to comply with the pre-suit notification requirements of the West Virginia statute, the Court dismisses Count 11.

*       *       *

28

In sum, the Court dismisses without prejudice each of the state-specific consumer

protection claims brought on behalf of Plaintiffs and putative state-specific subclasses. Because

the Court cannot conclude, with respect to these claims, that "'the allegation of other facts

consistent with the challenged pleading could not possibly cure the deficiency,'" dismissal

without prejudice is warranted. *Rudder*, 666 F.3d at 794. *See Firestone v. Firestone*, 76 F.3d

1205, 1209 (D.C. Cir. 1996) ("Failure to plead fraud with particularity … does not support a

dismissal with prejudice.").

### 3.   Warranty Claims

Plaintiffs also bring express and implied warranty-based claims. The Court first discusses

the law to apply to these claims. Plaintiffs argue that New York law applies to each of the

warranty claims. Compl. ¶ 171. In the alternative, they argue that the law of each plaintiff's

home state should be applied to the claims of the respective individual plaintiffs. *Id.* ¶ 172.

Defendants first argue that, if New York law is applied to the several warranty claims, as

Plaintiffs propose, the Complaint fails to state a claim with respect to each of the warranty

claims. They also argue that New York law should not be applied to these claims and that,

applying the law of Plaintiffs' respective home states to each claim, each claim would fail as

well. In turn, Plaintiffs respond that the Complaint states a claim with respect to the several

warranty claims under New York law; they also argue that, if the Court rejects their argument

that New York law governs these claims and instead applies the law of the states in which

Plaintiffs, respectively, reside, the claims survive as well. *See* Pls.' Radiancy Opp'n at 22-30.

Notably, neither party maintains that the choice of law affects the outcome: Plaintiffs argue that

the claims survive regardless of the law applied, and Defendants argue that the claims fail

regardless of the law applied. In addition, Plaintiffs argue that, in a putative class action, the

choice of law analysis should be postponed until after the conclusion of discovery. Accordingly, with respect to the motions to dismiss currently pending before the Court, the Court applies New York law in evaluating the warranty claims as Plaintiffs propose. The Court concludes, below, that the Complaint fails to state a claim with respect to any of the warranty claims and dismisses those claims. Having applied the body of law that Plaintiffs argue is applicable to these claims, the Court declines to evaluate whether the result would differ if the Court applied the law of the ten other states in which Plaintiffs live, as Plaintiffs suggest in the alternative.

### a.   Breach of Express Warranty (Count 13)

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). "To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Id.* (citations omitted). "The critical question is not whether the buyer believed in the truth of the warranted information … but 'whether [it] believed [it] was purchasing the [seller's] promise [as to its truth]." *CBS Inc. v. Ziff-Davis Pub. Co.*, 553 N.E.2d 997, 1000-01 (N.Y. 1990) (citation omitted and alterations in original).

Defendants argue that Plaintiffs have failed to allege the existence of an applicable warranty or to allege reliance on that warranty. Plaintiffs respond that they have adequately alleged the existence of affirmations or promises about the no!no! Hair removal device that constitute express warranties and that they have adequately alleged reliance on these warranties.

The Court agrees with Defendants that Plaintiffs have not adequately alleged a claim for a breach of an express warranty.

In support of their argument, Plaintiffs identify a series of allegations in the complaint that contain representations about the product, which they allege are false. *See* Pls.' Radiancy Opp'n at 29 (citing Compl. ¶¶ 84, 86, 90-91, 99-100, 112-113, 116-117). However, none of those allegations even so much as suggest that Plaintiffs were exposed to those particular representations or to the advertising containing those representations. Because Plaintiffs never allege that they actually were exposed to the specific representations that they identify as the basis for this claim, these representations cannot serve as a basis for the bargain in which Plaintiffs entered when they purchased the product. Furthermore, Plaintiffs argue that they have adequately alleged reliance, relying on the allegation that the individual plaintiffs "would not have bought the product" if they knew that the product "was unable to prevent hair regrowth and could not live up to its other representations." *Id.* (citing Compl. ¶¶ 13-25). However, because Plaintiffs did not allege the circumstances under which they were exposed to the specific representations they identified—or indeed whether they were exposed to them at all—those representations cannot be the basis for a claim of a breach of express warranty. Accordingly the Court dismisses the claim for a breach of an express warranty without prejudice.

### b.   Breach of Implied Warranty of Merchantability (Count 14, part 1)[16]

"The UCC's concept of a 'defective' product requires an inquiry only into whether the product in question was 'fit for the ordinary purposes for which such goods are used.' The latter

---

[16] Plaintiffs present a single claim for breach of the implied warranty of merchantability *and* the implied warranty of fitness for a particular purpose in Count 14. However, because these are distinct legal claims, the Court addresses each implied warranty claim separately. The Court denominates them Count 14, part 1, and Count 14, part 2, for the sake of clarity.

inquiry focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 736 (N.Y. 1995). "A warranty of fitness for ordinary purposes 'does not mean that the product will fulfill [a] buyer's every expectation.' Rather, it has been observed, such a warranty 'provides for a minimal level of quality.'" *Id.* at 736 n.4 (citations omitted). Given these principles, "[u]nder New York law, '[a] breach of implied warranty claim requires proof of the following three elements: (1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the accident.'" *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 407 (S.D.N.Y. 2013) *reconsideration denied*, No. 13 CIV. 1909 PAE, 2014 WL 1257780 (S.D.N.Y. Mar. 26, 2014) (citation omitted).

Defendants argue that Plaintiffs have not adequately alleged that the no!no! Hair removal device, as sold, was unfit for its ordinary purpose, which they frame as hair removal. Plaintiffs respond that they have adequately alleged that the device was unfit for its ordinary purpose because that purpose was, they argue, the permanent hair removal that they allege was touted in Radiancy's marketing campaign. Plaintiffs also respond there is an issue of material fact as to whether Plaintiffs were, in fact, using the device in a "customary, usual and reasonably foreseeable manner." *Denny*, 662 N.E.2d at 736. Defendants reply, in turn, that the question at this stage is not whether there is a factual issue as to whether Plaintiffs were using the device for its ordinary purpose, but rather whether Plaintiffs' pleadings are adequate.

The Court agrees with Defendants that the existence of a factual issue about the nature of Plaintiffs' use of the product is not relevant at this stage of the proceedings. The only question is whether Plaintiffs have adequately pleaded facts supporting a claim for breach of the implied

warranty of merchantability pursuant to New York law. However, this dispute reveals an even more fundamental problem: Plaintiffs have not adequately alleged that they have used the device and that it was not fit for the ordinary purpose for which it was intended. Even if Plaintiffs are right that the "ordinary purpose" of the product is the sort of long term hair removal that they allege was advertised, they have provided insufficient allegations to support that claim. Each individual plaintiff alleges purchasing the product but never alleges using it; as a result, they also do not allege that they were injured by its unfitness through their personal use. Plaintiffs do claim that their loss includes "the money and time expended by Plaintiffs and members of the Class in purchasing and testing the Product, which they wrongly expected would prevent unwanted hair growth." Compl. ¶ 204. However, this single reference to testing the product— disconnected from the experience of any individual—is not enough to support an inference that each plaintiff actually used the product, where the allegations pertaining to the individual plaintiffs do not make any such suggestion. *See, e.g., id.* ¶ 13. Moreover, Plaintiffs have not alleged that they experienced the alleged defect personally. Instead, they suggest that their injury occurred upon learning of the fact that the product would not function as they expected. *See id.* ¶ 167 (Plaintiffs "could only have possibly learned of their claims when Radiancy's internal documents were first revealed"). Accordingly, the Court concludes that Plaintiffs have not stated a claim for breach of the implied warranty of merchantability, and this claim is dismissed without prejudice.[17]

---

[17] Although the Court concludes that dismissing this claim without prejudice is proper, the Court notes that that, pursuant to New York law, the question of "fit" appears to be closely aligned with safety. *See Brazier v. Hasbro, Inc.*, No. 99 CIV.11258(MBM), 2004 WL 515536, at *4 (S.D.N.Y. Mar. 16, 2004)  ("Rather, recovery for breach of implied warranty of merchantability is appropriate 'upon a showing that the product *was not minimally safe* for its expected purpose ... .'") (citations omitted and emphasis added). *Cf. Derienzo v. Trek Bicycle Corp.*, 376 F. Supp.

### c.  Breach of Implied Warranty of Fitness for Particular Purpose (Count 14, part 1)

"For an implied warranty of fitness for a particular purpose claim to arise, the buyer must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill." *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 656 N.Y.S.2d 787, 790 (N.Y. App. Div. 1997). (quoting U.C.C. 2-315). "'The existence of this warranty, therefore, depends in part upon the comparative knowledge and skill of the parties.'" *Id.* (quoting *Blockhead, Inc. v. Plastic Forming Co.*, 402 F. Supp. 1017, 1024)). Moreover, "[a] 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." N.Y. U.C.C. Law § 2-315 (McKinney) (cmt. 2).

Defendants argue that the Complaint fails to allege that Plaintiff informed Radiancy of the particular purpose for which they were purchasing the product or that they were relying on Radiancy's expertise in choosing that product. Plaintiffs' respond that, "whether Plaintiffs have sufficiently shown that Radiancy should have known of Plaintiffs' particular purposes in purchasing the device is a factual question to be addressed through discovery." Pls.' Radiancy

---

2d 537, 570 (S.D.N.Y. 2005) ("This, combined with Clint Kolda's testimony, noted above, that taking a Y5 model bike off a 5–foot drop would constitute a "crash," could indicate that jumping was reasonably foreseeable, but that the Y5 was not designed or *reasonably safe* for such use.") (emphasis in original). Plaintiffs do not claim that the device was in any way unsafe. Instead, it appears that they claim that it has not met their expectations. But "[a] warranty of fitness for ordinary purposes 'does not mean that the product will fulfill [a] buyer's every expectation.' Rather, it has been observed, such a warranty 'provides for a minimal level of quality.'" *Denny*, 662 N.E.2d at 736 n.4.

Opp'n at 25. However, Plaintiffs have not, in fact, responded to Defendants' argument. The question before the Court now is not whether Plaintiffs have *shown* that Plaintiffs had made Defendants aware of their particular purposes; it is whether Plaintiffs have *alleged* that Defendants had reason to know of the particular purposes that Plaintiffs had for the device. Plaintiffs have not done so. Indeed, they have not even alleged that they had a particular purpose for using the device. In fact, they allege—and argue throughout their briefing—that their purpose in purchasing the device was the precise purpose for which they claim Radiancy was marketing the device—long-term hair removal. Moreover, even assuming that Plaintiffs had a particular purpose for using the device, the Complaint does not include any allegations suggesting that Radiancy was aware of any particular purpose that Plaintiffs may have had for the device. Nor have Plaintiffs alleged that any plaintiff communicated with Defendants such that they would have had reason to know that Plaintiffs maintained a particular purpose for purchasing the device. In sum, Plaintiffs have not identified a purpose for using the device that "differs from the ordinary purpose for which the goods are used" or "a specific use by the buyer which is peculiar to the nature of his business." N.Y. U.C.C. Law § 2-315, cmt. 2. For all of these reasons, the Court concludes that the Complaint fails to state a claim for breach of implied warranty of fitness for particular purpose. Because "'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,'" dismissal of this claim with prejudice is warranted. *Rudder*, 666 F.3d at 794.

### d.   Violation of Magnuson-Moss Warranty Act (Count 15)

The Magnuson-Moss Warranty Act provides a federal class action remedy for a breach of warranty. 15 U.S.C. § 2310(d). The parties agree that the viability of this claim is dependent on the viability of the state-law express and implied warranty claims. Because the Court dismisses

each of those claims, the Court dismisses this claim as well. The Court dismisses this claim without prejudice given that it dismisses the implied warranty of merchantability claim and the express warranty claim without prejudice.

### 4.   Request to Amend Complaint

In a single sentence in the conclusion to Plaintiffs' Opposition to Radiancy's Motion to Dismiss, Plaintiffs request, in the alternative, leave to amend their Complaint if the Court "sees any technical defects in the Complaint." Pls.' Radiancy Opp'n at 30. Plaintiffs do not attach a proposed amended complaint nor do they suggest how this amended complaint would fix any "technical defects" with the Complaint. Accordingly, the request is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Radiancy's [14] Motion to Dismiss and GRANTS Defendant Rafaeli's [13] Motion to Dismiss Putative Class Action Complaint. All claims against Rafaeli are DISMISSED for want of personal jurisdiction, and Plaintiffs' alternative request to conduct jurisdictional discovery with respect to Rafaeli is denied. All claims against Radiancy are DISMISSED because the Complaint fails to state a claim against Radiancy. Specifically, the claim pursuant to New York General Business Law §§ 349-350 (Count 1) and the implied warranty of fitness for a particular purpose claim (Count 14, part 2) are dismissed WITH PREJUDICE. The state-specific consumer protection claims (Counts 2 through 12), the express warranty claim (Count 13), the implied warranty of merchantability claim (Count 14, part 1), and the Magnuson-Moss Warranty Act claim (Count 15) are dismissed WITHOUT PREJUDICE. Finally, Plaintiffs' cursory request to amend the complaint is

DENIED. This action is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: March 30, 2015

                                                    _____/s/_____

                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge